### LEE PARRISH V. THE STATE.

No. 20735. Delivered January 10, 1940.

The opinion states the case.

*J. R. Bogard*, of San Augustine, and *J. R. Anderson*, of Center, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

This is the third appeal by Lee Parrish from convictions for murder of Lonnie Hooper in San Augustine County on October 11, 1934. The penalty assessed by the jury is fifteen years in the penitentiary.

For the opinions on the former appeals, see Parrish v. State, 129 Tex. Cr. R. 626, 91 S. W. (2d) 366, and 134 Tex. Cr. R. 187, 114 S. W. (2d) 559.

So far as the facts are given in the former appeals they are practically the same as in this one. It was held in the second appeal that the witness, Boss Brown, was an accessory and an accomplice, and that holding will be adhered to in this case.

The principal question presented is whether or not there is sufficient corroborating evidence of the witness Brown, upon whose testimony the State principally relies, to support a conviction. For the point under consideration it will be necessary to give a rather detailed statement of the evidence as it is found in the present record.

The appellant and his father, Watt Parrish, lived neighbors, their homes being situated on what we would denominate the north-south road and within a few hundred yards of the cross road running east-west. From a point near appellant's home there was an old winding road running in a southwesterly direction which intersected the east-west road at a point southwest of the appellant's home and some distance west of the intersection. There was another lateral road leaving the north-south road at a point between the Watt Parrish home and the cross of the roads, going in a southeasterly direction which intersected the east-west road at a

point east of the cross of the two principal roads. East of this intersection was a school house and beyond that the home of the principal witness Boss Brown. About one o'clock in the afternoon several parties appeared at the home of Watt Parrish and one of them, who lived there, prepared the dinner. Boss Brown, Lonnie Hooper and his cousin, Ewell Hooper, were present. The latter two lived some distance away, and it appears that they were hunting, each carrying a .22 calibre rifle. After lunch the two Hooper boys left the home of Watt Parrish and went in a southwesterly direction across the field or opening and entered the woods where they were later killed about 600 yards away. Their bodies were 130 and 160 yards respectively north of the east-west road and near the foot of a very steep hill on the side of which were trees and shrubbery. Lonnie Hooper, for whose death the appellant was convicted, was a boy sixteen years of age. The age of Ewell Hooper is not given, but he was a young man and spoken of as a boy. Ewell's body was 160 yards from the road and lay at the foot of the hill, while Lonnie's body was 130 yards from the road and on the side of the hill. Each body, when found, was pierced with a .22 bullet which produced his death. The bullet which entered Ewell Hooper's body two or three inches below the navel came out just below the arm pit, ranging upward from the point of entry. The one which penetrated Lonnie Hooper entered just below the top of the breastbone and went practically straight through on a line. The doctor testified that the wound on the body of Ewell Hooper killed him instantly while Lonnie Hooper should have lived from five to fifteen minutes, and that he would not be deprived of his ability to move until he bled to death, unless he had fainted.

Boss Brown testified that soon after the Hooper boys left the Watt Parrish home, he and the appellant got a bottle of whisky and left the home of appellant, which was a short distance north of the Watt Parrish home, and traveled the road in a southwesterly direction until it intersected the east road; that they then turned east. At a point on the top of a steep hill, appellant stopped, got off his horse, and with the .22 rifle which he carried in his hand, shot down the hill twice. As he did so, the witness heard Lonnie Hooper scream; that he was familiar with his voice and recognized it; that he heard him say ,"Oh, Lordy" about twice. The witness did not stop but continued riding in an easterly direction. Appellant soon caught up with him and remarked, "The God damn son-of-a-bitches won't bother my beer barrel any more." The witness replied, "You ought not to have done that." Appellant then said, "You heard

what I said; the God damn son-of-a-bitches won't bother my beer barrels no more"; and also, "You better not tell it."

No one was present when this conversation took place except appellant and Boss Brown. The witness and appellant continued in an easterly direction to the school house where they waited a short while for the three children of the witness, the largest of whom got on the horse with the appellant and the other two with the witness. They continued east down the road to the home of the witness. This was about 3:30 o'clock in the afternoon. Appellant remained at the home of the witness until about 9:00 o'clock that night. They drank together and the witness became very drunk, so much so that he was not able to tell just when appellant left and whether or not he took his dog with him; except that the dog was not there the next morning. About the time that appellant reached his home he learned of the death of the two Hooper boys. He went with others to the scene of the tragedy and was there arrested and placed in jail. Quite a number of people had gathered at the place. This was on Thursday. The sheriff visited the scene again the next morning with his deputies and after making further investigations arrested the witness, Boss Brown, and took him to jail. It was at this time that he made statements which this court, on the former appeal, held constituted him an accessory and his testimony that of an accomplice. (See 134 Tex. Cr. R. 187). On the following Sunday the sheriff went again to the scene of the tragedy and discovered the tracks of two horses without shoes along the old road in the southwest direction to the intersection of the east-west road and then east to the top of the hill opposite a point where the bodies were found, at which place there was a break in the tracks. There is no attempt to identify these tracks with the track of the horses which the appellant and Boss Brown rode on the previous Thursday. There is positive testimony by another witness, an officer, that he had examined the roadway for horse tracks prior to the Sunday morning and had failed to find them. At the time Brown and the appellant left the appellant's home together, as above detailed, Brown testified that appellant had a .22 rifle which he carried in his·left hand. This fact was denied by other witnesses at the house, one of whom was placed on the witness stand by the State. It was also denied by the teacher at the school and several school children. Brown's wife and one other, however, testified to seeing the gun at the front gate of the witness' home. Their testimony is the only evidence corroborating the witness Brown in his statement that appellant had a gun.

The witness Brown is the only party who testified that the appellant rode in a southwesterly direction from his home or in the vicinity of the tragedy, the other witnesses stating that they·went south and turned east at the cut-off road without going to the intersection of the two main roads. A State's witness so testified. The only evidence corroborating the statement of the witness Brown in his claim that he and the appellant rode in the vicinity of the tragedy was the fact that the sheriff testified to having seen the tracks of two horses when he examined the roadway the following Sunday. In view of the nature of this testimony and the fact that one officer testified that the tracks were not there at a time previous to Sunday morning and after the killing, we consider this evidence of practically no probative force.

Brown testified that Lonnie Hooper cried out in an audible voice, "Oh, Lordy," twice, while parties who were in a cotton patch nearby testified that they heard distress cries in the afternoon in the vicinity where the bodies were found, but they do not corroborate the witness as to what was said. It, therefore, appears that the only corroborating testimony to the story as told by Brown is that of his wife and the child at his home, who said that they saw a gun which the appellant had at the front gate.

The physical facts, as embraced in the testimony of the sheriff and the doctor who examined the bodies, together with the positions which they occupied on the hill and at the point at which the appellant was said to have stood when he fired the fatal shots, are significant. The hill was very steep, so steep that one could not climb it walking straight and without the aid of holding on to the trees and bushes. There was considerable shrubbery, and the bodies were from 130 to 160 yards away. One of them (Ewell), who was the greatest distance, was believed by the doctor to have died instantly. The bullets went through one body on a straight line, while it ranged upward from the point of entry in the other. It was claimed that appellant hit each of his victims with a .22 rifle this distance and each bullet struck a vital spot. In view of the fact that appellant was shooting down a steep hill, it can hardly be seen how the bullets would go straight through the bodies, and more remarkable, that one could range upward after entering the body. Another significant fact from the testimony is that the two boys each had a .22 rifle and that each of their guns had in it an empty cartridge at the time the bodies were found, showing that each had fired his gun and had failed to discharge the shell. All of these facts were for

the consideration of the jury, and also for the consideration of this court on the question as to whether or not the accomplice witness is corroborated in the material facts to which he testified. None of these facts and circumstances in any way aid the State's case.

In the state of the foregoing facts and because of the failure of the State to corroborate the evidence of the witness Brown on the several material facts to which he testified, this cause will be reversed and remanded for a new trial. It is not amiss for this court to say that unless the State should be able to materially strengthen the corroborating testimony, another trial of the case would appear to be useless.

Appellant also complains of the charge of the court on accomplice testimony. This bill must be sustained. The court did not apply the law to the facts of this case in the manner which has been consistently required. Alsup v. State, 49 S. W. (2d) 749; Goldman v. State, 95 S. W. (2d) 423; Tullos v. State, 127 S. W. (2d) 301; Quinn v. State, 123 S. W. (2d) 890. Special attention is called to the case of Quinn v. State, wherein this court has set out specifically a correct charge on the subject as required under the facts of this case.

The cause is reversed and remanded.